UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EDDIE CROSS, )<br>)<br>Petitioner, )<br>)<br>vs. )<br>)<br>TROY STEELE, )<br>)<br>Respondent. ) | Case No. 4:13 CV 1986 CAS (ACL) |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on the Petition of Eddie Cross for a Writ of Habeas Corpus under 28 U.S.C. § 2254. This cause was referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b).

**I. Procedural History**

Cross is incarcerated at Potosi Correctional Center in Mineral Point, Missouri, pursuant to the Sentence and Judgment of the Circuit Court of St. Louis County, Missouri. (Respt's Ex. A at 40-42.)

On August 31, 2009, Cross entered a "blind" plea of guilty to one count of first degree robbery and one count of armed criminal action, with no agreement about the sentence that the court might impose. (Respt's Ex. B at 1-11.) The court sentenced Cross to concurrent terms of eighteen years imprisonment on each count. *Id.* at 12-31.

On April 28, 2010, Cross filed a *pro se* Motion to Vacate, Set Aside or Correct the Judgment or Sentence pursuant to Mo.S.Ct.Rule 24.035. *Id.* at 46-63. On September 7, 2010, after appointment of counsel, Cross filed an Amended Motion to Vacate, Set Aside or Correct Judgment and Sentence and Request for Evidentiary Hearing. *Id.* at 68-79. Cross argued that he

1

was denied effective assistance of counsel because plea counsel failed to ensure that Cross understood the state's recommendation before entering a blind plea of guilty. *Id.* An evidentiary hearing was held on November 23, 2010, at which Cross and plea counsel testified. (Respt's Ex. C.) On July 27, 2011, the motion court denied Cross' motion. (Respt's Ex. A at 83-88.) The court held that Cross' claim was refuted by the record. *Id.*

In his single point on appeal from the denial of post-conviction relief, Cross argued that he was denied his right to effective assistance of counsel because plea counsel allowed him to enter a blind plea of guilty under the misunderstanding that the state was recommending a sentence of fifteen years' imprisonment. (Respt's Ex. D at 10.) On October 23, 2012, the Missouri Court of Appeals affirmed the denial of post-conviction relief. (Respt's Ex. F.)

On March 7, 2013, Cross filed a state petition for writ of habeas corpus under Rule 91 in the Circuit Court of Washington County, Missouri, in which he raised the following claims: (1) he received ineffective assistance of counsel when counsel failed to investigate witnesses; (2) he received ineffective assistance of counsel when counsel failed to obtain a video of the incident or fingerprint evidence; (3) the prosecution violated *Brady* when it failed to produce a video of the incident and fingerprint evidence; and (4) he received ineffective assistance of counsel when counsel failed to file a motion to suppress. (Respt's Ex. G.) The state argued that the Petition should be denied because Cross failed to properly plead his claims. (Respt's Ex. H.) The Circuit Court of Washington County dismissed Cross' Petition on July 10, 2013, for the reasons set forth in the state's responsive pleading. (Respt's Ex. I.)

On October 2, 2013, Cross, *pro se*, filed the instant Petition for a Writ of Habeas Corpus. (Doc. 1). Cross raises the following ineffective assistance of counsel claims: (1) plea counsel failed to ensure that Cross understood the state's recommendation before entering the blind pleas and failed to clarify the issue during the plea hearing; (2) counsel failed to investigate witnesses;

2

(3) counsel failed to file a motion for disclosure/*Brady* violation regarding a surveillance tape and fingerprint evidence; and (4) counsel failed to file a motion to suppress. *Id.* at 5.

On March 5, 2014, Respondent filed a Response to Order to Show Cause, in which he argues that Ground One fails on its merits, and Grounds Two, Three, and Four are procedurally defaulted and fail on their merits. (Doc. 11.)

Cross has filed a Traverse, in which he provides additional argument in support of Ground One, and "dismisses Grounds Two, Three and Four without prejudice." (Doc. 19 at 2.)

## II. Facts

At the plea hearing, counsel stated that Cross wished to plead guilty to both charges "not pursuant to a recommendation that has been made by the State of Missouri." (Respt's Ex. B at 3.) Counsel stated that plea negotiations had occurred, but Cross "has decided he wishes to enter a blind plea of guilty in this case." *Id.*

The court then questioned Cross regarding his rights and his understanding of the blind plea. The court asked Cross if "anyone made any threats or promises to you in order to get you to enter the pleas of guilty," to which Cross responded: "No." *Id.* at 7.

The prosecutor stated that the range of punishment for the robbery in the first degree charge was "10 years to 30 years, or a life sentence in the Missouri Department of Corrections." *Id.* at 8. He stated that the range of punishment for the armed criminal action was "three years up to an unlimited number of years in the Department of Corrections, or a life sentence." *Id.* Cross testified that he was aware of the range of punishment of these offenses prior to entering his pleas. *Id.* at 8-9.

The court asked the prosecutor, "understanding that no bargain has been reached in terms of plea negotiations," whether the state had a recommendation regarding the sentence. *Id.* at 9.

3

The prosecutor stated that the state was recommending concurrent sentences of twenty years on each count. *Id.* When asked by the court whether he understood that that was the prosecutor's recommendation prior to the plea hearing, Cross stated "I think it was." *Id.*

Plea counsel then explained that "there had been negotiations about coming down to a fifteen-year term, we made a counteroffer to the State with respect to that, and that was communicated to Mr. Cross as well." *Id.* Cross stated that it was his recollection that the state "came down to 15." *Id.* at 10. The court responded: "But you indicated to [plea counsel] by pleading guilty here—by entering the blind plea of guilty here this morning you're telling me that you rejected that recommendation and that you're placing sentencing in my hands on a blind plea; is that correct?" *Id.* Cross responded: "Yes." *Id.* Cross testified that he was pleading guilty to the charges because he was, in fact, guilty. *Id.* The court found that Cross had pleaded guilty freely and voluntarily, and accepted Cross' guilty pleas. *Id.*

The prosecutor then clarified for the record that he had never recommended fifteen years. *Id.* at 11. He stated that he and plea counsel had discussed the possibility of a fifteen-year recommendation, and that he told plea counsel it was a counteroffer that he "would consider." *Id.* Plea counsel responded that "we decided still in lieu of that, that was not a number he would take, and preferred to do a blind plea in this case." *Id.*

At the sentencing hearing, the plea court asked Cross whether he knew of any reason the court should not proceed with the sentencing. *Id.* at 13-14. Cross stated: "The reason about the recommendation, it was my understanding was 15, and my understanding was that it wasn't going to exceed that…" *Id.* at 14.

Plea counsel then explained that he and the prosecutor had discussed a fifteen-year recommendation, and the prosecutor indicated that he would consider a counteroffer of fifteen years. *Id.* at 14-15. Plea counsel stated that he communicated this information to Cross, but

4

Cross was unwilling to accept a fifteen-year sentence, and "felt it was more appropriate to plead blind." *Id.* at 15. Plea counsel stated that a formal counteroffer was never made, and the prosecutor never agreed to accept such a counteroffer. *Id.* The prosecutor testified that he "never conveyed anything other than a 20-year recommendation." *Id.* at 16. He stated that when discussions were had with plea counsel about a potential counteroffer, he told plea counsel to make a counteroffer and he would take it to his supervisors. *Id.*

Cross again stated that it was his "understanding" that the prosecutor "recommended 15 years on the record." *Id.* Cross testified as follows:

> But [plea counsel] verbally said to me, he said the Judge knows what—he had already talked to you, as we said, and the Judge already know[s] what's going on, he already knew what the recommendation was, and that, you know, there's a chance because of my background that I would—you would come down on my sentence. That's [the] only reason I went to the blind plea or I would have took [sic] the 15.

*Id.* at 20. When the court stated "there was never a 15-year sentence offered to you by the prosecuting attorney," Cross responded "Not by the prosecutor, no." *Id.* at 22.

The court concluded:

> The record will be clear as to what happened at the time of the plea, and I feel very comfortable that the State recommended 20 years. I asked you if you understood that was going to be their recommendation, you said yes, and I went ahead and accepted the blind plea of guilty.

*Id.* at 22-23. The court then sentenced Cross to concurrent terms of eighteen years' imprisonment on each count. *Id.* at 23.

At the evidentiary hearing held on Cross' motion for post-conviction relief, Cross testified that plea counsel told him that the state "came down five" and was recommending fifteen years. (Respt's Ex. C at 14.) Cross further testified that counsel told him that, if he entered a blind plea, he did not "think the judge would exceed the 15." *Id.* at 16. Cross stated that he pleaded guilty

5

based upon that conversation with counsel, and that he would not have pleaded guilty if he knew the state's offer was twenty years. *Id.* at 17.

Plea counsel testified that, although he had discussions with the prosecutor about the possibility of a counteroffer of fifteen years, he never made a counteroffer because Cross did not authorize him to do so. *Id.* at 7. Plea counsel stated that he advised Cross that he could either proceed to trial or enter a blind plea and ask for a sentence lower than fifteen years. *Id.* at 8, 10. He stated that he never told Cross that the state was offering fifteen years as its recommendation, but, rather, he always told him the state's recommendation was twenty years. *Id.* at 11. Counsel testified that he advised Cross that the full range of punishment was open to him if he entered a blind plea, but that he could also receive a sentence below the state's recommendation of twenty years, or below fifteen years. *Id.* at 12.

### III. Standard of Review

A federal court's power to grant a writ of habeas corpus is governed by 28 U.S.C. § 2254(d), which provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court construed Section 2254(d) in *Williams v. Taylor*, 529 U.S. 362 (2000). With respect to the "contrary to" language, a majority of the Court held that a state court

decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or if the state court "decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Id.* at 405. Under the "unreasonable application" prong of § 2254(d)(1), a writ may issue if "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies [the principle] to the facts of the particular state prisoner's case." *Id.* Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 410. Although the Court failed to specifically define "objectively unreasonable," it observed that "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 410.

### IV. Procedural Default

Respondent contends that Grounds Two, Three, and Four are procedurally defaulted.

To avoid defaulting on a claim, a petitioner seeking federal habeas review must have fairly presented the substance of the claim to the state courts, thereby affording the state courts a fair opportunity to apply controlling legal principles to the facts bearing on the claim. *Wemark v. Iowa*, 322 F.3d 1018, 1020–21 (8th Cir. 2003) (internal quotation marks and citations omitted) (quoting *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) and *Anderson v. Groose*, 106 F.3d 242, 245 (8th Cir. 1997)). Specifically, a state prisoner must fairly present each of his claims in each appropriate state court before seeking federal habeas review of the claim. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). A claim has been fairly presented when a petitioner has properly raised the same factual grounds and legal theories in the state courts that he is attempting to raise in his federal petition. *Wemark*, 322 F.3d at 1021 (internal quotation marks

7

omitted) (quoting *Joubert v. Hopkins*, 75 F.3d 1232, 1240 (8th Cir. 1996)). Claims that are not fairly presented to the state courts are procedurally defaulted. *See id.* at 1022.

In cases of procedural default, federal courts are barred from reaching the merits of the defaulted ground absent a showing of both 'cause' and 'actual prejudice' resulting from the alleged constitutional violations. *See Wainwright v. Sykes,* 433 U.S. 72, 87 (1977). A petitioner must "show that some objective factor external to the defense impeded counsel [or petitioner's] efforts to comply with the State's procedural rule" in order to show "cause" for procedural default. *Murray v. Carrier,* 477 U.S. 478, 488 (1986). "Cause" can be demonstrated by either "a showing that the factual or legal basis for a claim was not reasonably available to counsel" or by a showing that interference by officials made compliance impracticable. *Id.* If a petitioner cannot show 'cause' for the procedural default, then the court need not determine whether actual prejudice has resulted. *See Leggins v. Lockhart,* 822 F.2d 764, 768 (8th Cir. 1987).

Cross raised the ineffective assistance of counsel claims contained in Grounds Two, Three, and Four in his state habeas corpus petition, but the circuit court declined review of those claims due to Cross' failure to plead them sufficiently. (Respt's Ex. I.) Cross' failure to plead these claims sufficiently serves as an adequate and independent state procedural bar to review. *Smith v. Groose*, 998 F.2d 1439, 1441 (8th Cir. 1993).

Cross does not allege cause for his failure to properly plead these claims. Instead, he requests that Grounds Two, Three, and Four be dismissed without prejudice in his Traverse. (Doc. 19 at 2.) Thus, Cross has not established cause to excuse his procedural default as to Grounds Two, Three, and Four, and these claims will be dismissed.

## V. Cross' Claim

In Ground One, his only remaining claim, Cross argues that he received ineffective assistance of counsel rendering his guilty pleas involuntary. Specifically, Cross contends that

8

plea counsel did not ensure that Cross understood the state's sentence recommendation. This is the same claim Cross raised in the post-conviction proceedings.

The motion court rejected Cross' claim, holding that Cross' claim was refuted by his statements at both the plea hearing and by the evidence adduced at the evidentiary hearing. (Respt's Ex. A at 85.) The court further found that, in light of the strong evidence of Cross' guilt, Cross' claim that he would have proceeded to trial and risked a life sentence if he thought the state's recommendation was twenty years lacks credibility. *Id.* at 86.

The Missouri Court of Appeals held as follows:

> Movant failed to demonstrate that plea counsel misinformed him that the State's recommended sentence was fifteen years' imprisonment and that his mistaken belief to that effect was therefore reasonable. Our review of the record reveals that Movant testified inconsistently about the advice he received from plea counsel. At the plea hearing, Movant testified that he understood 'prior to coming in here this morning' that the State's recommendation was twenty years' imprisonment for each count. Movant also acknowledged that, by entering a blind plea of guilty, he was rejecting the States' recommendation and placing the sentencing decision in the hands of the plea court. At the sentencing hearing, Movant informed the plea court that he believed the State was recommending fifteen years and the trial court's sentence would not exceed that length. However, after plea counsel and the prosecutor explained to the court that they had discussed the possibility of a fifteen-year sentence but the prosecutor never offered Movant fifteen years, Movant acknowledged that 'there was never a 15-year sentence offered to [him] by the prosecuting attorney.' Despite this earlier testimony, Movant reasserted at the evidentiary hearing that plea counsel informed him that the State's recommendation was fifteen years' imprisonment and assured him that, if he entered a blind plea, the court's sentence would not exceed fifteen years.
> Plea counsel's testimony directly refuted Movant's claims that counsel misinformed him that the State was recommending fifteen years and the plea court's sentence would not exceed that recommendation. Plea counsel testified that he never told Movant the State was offering fifteen years as its recommendation. Plea counsel also stated that, prior to the guilty plea, he explained to Movant that the full range of punishment would be available to the plea court, but plea counsel could 'certainly ask for better than 15…' According to plea counsel, he did not assure Movant that his sentence would be equal to or less than fifteen years. The motion court found that Movant's 'testimony lack[ed] credibility' and accepted as true plea counsel's testimony. The determination of the relative credibility of Movant and plea counsel, with respect to whether plea counsel positively misrepresented the State's recommendation

9

and the court's possible sentencing decision, was for the motion court and we defer to that determination. [citation omitted]

Further, based on our review of the record, we conclude that any mistaken belief Movant had regarding the State's recommendation or the plea court's possible sentencing decision was unreasonable. The record shows that the plea court clearly disabused Movant of any alleged misunderstanding by stating that the States' recommended sentence was twenty years' imprisonment and explaining the range of punishment and the plea court's power to grant whatever sentence it deemed proper. [citation omitted]

Finally, Movant failed to prove that, had he known the State was recommending twenty years, and not fifteen years, he would have proceeded to trial and risked receiving a life sentence.[1] The range of punishment for the charges of first-degree robbery and armed criminal action was ten to thirty years or life imprisonment. At the evidentiary hearing, Movant acknowledged the significant evidence against him, including the facts that he was arrested close to the scene of the robbery, he had in his possession the victim's property, the victim identified Movant, and the State had video footage of the robbery. At the sentencing hearing, the prosecutor also indicated that Defendant had written 'a very detailed' statement and the police recovered the gun used by Defendant very close to where Defendant was arrested. In light of the significant evidence of guilt and the possibility of a life sentence, we cannot say the trial court clearly erred in finding that Movant would not have pleaded guilty if he had known the State's actual recommendation. [citation omitted]

(Respt's Ex. F at 8-10.)

In *Hill v. Lockhart*, 474 U.S. 52, 58 (1985), the Supreme Court held that the two-pronged *Strickland* test applies to challenges to guilty pleas on grounds of ineffective assistance of counsel and that, to prevail, a habeas petitioner must show that his attorney's performance "'fell below an objective standard of reasonableness,'" and that "'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Hill*, 474 U.S. at 59 (quoting *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)).

Based on a review of all of the evidence, the undersigned finds that the state courts' denials of this claim were not contrary to, nor do they involve an unreasonable application of

---

[1] Movant also alleged that, had he known the State was recommending twenty years, he would have continued negotiating a plea agreement. However, to prevail on a motion for post-conviction relief, a movant must demonstrate that, but for counsel's errors or ineffectiveness, the movant would not have pleaded guilty and would have insisted on going to trial. *Webb v. State*, 334 S.W.3d 126, 128 (Mo. banc 2011) (footnote in original).

10

clearly established federal law, nor did they result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. The record supports the finding of the Missouri Court of Appeals that Cross testified inconsistently about the advice he received from plea counsel. Significantly, Cross testified at the sentencing hearing that the prosecutor never offered him a fifteen-year sentence. The testimony of plea counsel and the prosecutor reveal that the state never recommended a fifteen-year sentence. The court went to extensive lengths to ensure Cross understood the state's recommendation. Considering Cross' statements at the plea and sentencing hearings, and evidentiary hearing, the state courts were reasonable in finding that Cross received effective assistance of counsel and voluntarily, knowingly, and intelligently pleaded guilty.

## VI.     Certificate of Appealability

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right. *See* 28 U.S.C. § 2253(c)(2); *Hunter v. Bowersox*, 172 F.3d 1016, 1020 (8th Cir. 1999). A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). In this case, Cross has failed to make a substantial showing of the denial of a constitutional right. The undersigned is not persuaded that the issues raised in his Petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, the undersigned recommends that no Certificate of Appealability be issued.

# RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the Petition of Eddie Cross for a Writ of Habeas Corpus under 28 U.S.C. § 2254 be **denied**.

**IT IS FURTHER RECOMMENDED** that no Certificate of Appealability be issued.

The parties are advised they have fourteen days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636 (b) (1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. *See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990).

s/Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 25th day of October, 2016.